IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MITAS ENDUSTRI SANAYI TICARET A.S., | |
| Plaintiff, | |
| v. | Civil Action No. 20-1285-CFC |
| VALMONT INDUSTRIES, INC., | |
| Defendant. | |

## MEMORANDUM ORDER

Plaintiff Mitas Endustri Sanayi Ticaret A.S. (Mitas) filed this action against Defendant Valmont Industries, Inc. Mitas alleges it is entitled to remedies for Valmont's "(i) deliberate and willful misappropriation of Mitas's trade secrets, (ii) deceptive trade practices, (iii) unjust enrichment, and (iv) tortious interference with Mitas's contracts." D.I. 2 ¶ 1. Pending before me is Valmont's motion to compel arbitration of Mitas's claims, or in the alternative, to dismiss Mitas's Complaint for failure to state a claim pursuant to Rule 12(b)(6). D.I. 40.

In 2016, "Valmont approached Mitas about a proposed joint venture," and on November 2, 2016, Valmont and Mitas entered into a nondisclosure agreement (NDA) in connection with the proposed venture. D.I. 2 ¶¶ 34, 37. The NDA was entered into by Mitas's "affiliate," Mitas Enerji ve Madeni insaat Isleri T.A.S.

(Mitas Energy). As a result of restructuring in 2018, Mitas Endustri Sanayi Ticaret A.S. is the successor to Mitas Energy. D.I. 28 ¶ 4. Mitas does not dispute that it is a party to the NDA, nor can it, given that it has already alleged it has rights under the NDA. *See* D.I. 2 ¶ 41 ("In the event Mitas obtains evidence that Valmont has breached the nondisclosure agreement, Mitas reserves any and all rights arising from such breach.").

Section 11 of the NDA states, in part:

> Any dispute, controversy or claim arising out of or in connection with this Agreement, if not amicably resolved by the parties within sixty (60) days of notification thereof shall be submitted for binding arbitration under the Rules of Arbitration of the International Chamber of Commerce (ICC). Each party shall appoint one arbitrator and the third arbitrator, who shall chair the Arbitral Tribunal, shall be appointed by the two arbitrators appointed by the parties. The venue of the arbitration shall be Geneva (Switzerland) and the proceedings shall be conducted in the English language . . . . Any award of the arbitral tribunal shall be final and binding on the parties. The parties hereby waive any and all their rights to appeal any arbitration award before, or to seek determination of any question of law arising in the course of arbitration from, any courts.

D.I. 32, Ex. J § 11.

Under § 4 of the Federal Arbitration Act (FAA), "[a] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

2

The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2 of the FAA is the "primary substantive provision of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Each of Mitas's arguments in opposition to Valmont's motion go to whether Mitas's claims are subject to arbitration. *See* D.I. 44 at 9 ("Mitas'[s] claims in this lawsuit do not arise out of or connect to the 2016 NDA because they: (i) can be established without relying on the 2016 NDA; (ii) have no substantive connection to the 2016 NDA; and (iii) have no temporal connection to the 2016 NDA."). The Supreme Court has held that parties "may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citations omitted); *see also Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) ("To the extent that a particular ground implicates the threshold question of whether the parties are bound by an

3

agreement to arbitrate, it is referred to as a gateway question of arbitrability[.]" (citations omitted)).

"[C]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *First Options of Chi., Inc., v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks and citation omitted). The parties' incorporation of the ICC Rules in section 11 of the NDA provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.[1]

---

[1] The Third Circuit has held that the incorporation of the AAA Rules in an arbitration clause "constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability." *Richardson v. Coverall N.A., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020); *see also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763-64 (3d Cir. 2015) ("[V]irtually every circuit to have considered the issue [of arbitrating arbitrability] has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (citations omitted)).

Section 11 of the NDA explicitly incorporates the ICC Rules, which, like the AAA Rules, clearly and unmistakably delegate the issue of arbitrability to the arbitrator. *Compare* American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a) (2013) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.") *with* D.I. 42, Ex. R at ICC Rules, Art. 6.3 ("[I]f any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitration tribunal . . . ."); *see also URS Corp. v. Lebanese Co. for Dev. and Reconstruction of Beirut Cent. Dist. SAL*, 512 F. Supp. 2d 199, 207 (D. Del. 2007) ("The ICC rules

Accordingly, Supreme Court precedent mandates that I grant Valmont's petition and allow the Arbitrator to resolve in the first instance the arbitrability of Mitas's claims. *Schein,* 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

NOW THEREFORE, at Wilmington this Twenty-seventh day of July in 2021, **IT IS HEREBY ORDERED** that Valmont's Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss (D.I. 40) is **GRANTED**.

_____
UNITED STATES DISTRICT JUDGE

---

make clear that the question of arbitrability will ultimately be addressed by the ICC tribunal composed of the confirmed arbitrators.").